**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **LATOYA CONER,** | * | |
| | * | |
| **v.** | * | **Civil Action No. CCB-17-0366** |
| | * | |
| **OFFICER DUANE WILLIAMS, JR.,** *et al.* | * | |
| | * | |

## MEMORANDUM

Pending before the court is a motion for summary judgment brought by plaintiff Latoya Coner, individually and as mother of the minor child S.M. For the reasons stated below, the court will grant in part and deny in part plaintiff's motion.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff Latoya Coner is the mother of the minor child S.M., who was fourteen years old at all times relevant to this matter. Defendants Duane Williams, Jr. and Lonnie White, Jr. are former officers of the Baltimore Police Department ("BPD").[1] Mr. Williams was a BPD officer from May 2009, ECF 45-3 at p. 4, until his resignation in February 2016, ECF 45-3 at pp. 15–16.[2] Mr. White was a BPD officer from March 31, 2005, until his termination on or about December 29, 2017. ECF 45-4 at p. 3.

When S.M. was around eight years old, he was diagnosed with provisional bipolar disorder. ECF 54-2 at p. 4. On January 14, 2015, Ms. Coner and S.M. had a disagreement related to S.M.'s treatment for his disorder. Specifically, S.M. refused to attend an appointment for mental health services at a Baltimore treatment center that day, ECF 54-2 at pp. 4–5, and an employee of the treatment center advised Ms. Coner that she could obtain an emergency petition for immediate

---

[1] The court dismissed defendants Anthony Batts and Bijay Ranabhat on July 19 and August 1, 2017, respectively. ECF 33; ECF 57.

[2] Page references are to the ECF document.

treatment of S.M. by contacting BPD, ECF 54-2 at p. 5. Following this advice, Ms. Coner contacted BPD later that day, falsely claiming that S.M. had pushed her down some steps in order to obtain police assistance in executing an emergency petition for S.M.'s treatment. ECF 54-2 at p. 5. At no time during this incident or afterwards did Ms. Coner inform the police that S.M. had not assaulted her. ECF 54-2 at p. 14.

Mr. White, along with another officer, responded to Ms. Coner's call. ECF 45-4 at pp. 7–8. Speaking to Mr. White, Ms. Coner again falsely claimed that S.M. had physically assaulted her, and also informed Mr. White that S.M. had a mental health condition for which he was taking medication. ECF 45-4 at p. 9. Ms. Coner requested that Mr. White not arrest S.M. ECF 45-4 at p. 9. Based upon this information, Mr. White handcuffed S.M. and called for a police vehicle to transport S.M. to Sinai Hospital pursuant to an emergency petition. ECF 45-4 at p. 10. Mr. White also called Mr. Williams to let him know that he was escorting a minor child to Sinai Hospital, relaying a factual summary of the situation to Mr. Williams. ECF 45-3 at p. 7. Mr. Williams heard the initial 911 dispatch call come through the police dispatch center and originally had intended to respond to the 911 call. ECF 45-3 at p. 7. Mr. Williams traveled to the hospital soon thereafter.

Mr. White escorted S.M. through the intake procedures at Sinai Hospital, maintaining S.M.'s restraints throughout the process. ECF 45-4 at p. 10–11. Mr. White claimed that S.M. was unruly and hostile during the intake process, often swearing and yelling at the physician, the hospital staff, and the officers in his hospital room. ECF 45-4 at p. 13. While hospital staff was attempting to take S.M.'s vitals, Mr. Williams and Mr. Ranabhat arrived at Sinai Hospital and began observing S.M., with Mr. Williams describing S.M. as "irate." ECF 45-3 at p. 9. At some point after Mr. Williams and Mr. Ranabhat's arrival, Mr. White explained that Ms. Coner had

claimed that S.M. had assaulted her and that S.M. had mental health challenges. ECF 45-4 at p. 17.

After observing S.M. for a few minutes, Mr. Williams asked the medical personnel to step out of the hospital room, leaving S.M. alone with Mr. Williams, Mr. White, and Mr. Ranabhat. ECF 45-3 at p. 9. Mr. Williams instructed Mr. White to readjust S.M.'s handcuffs so S.M. could place his hands in front of himself rather than behind his back. ECF 45-3 at pp. 6, 9. After the medical personnel left the hospital room, Mr. Williams began attempting to calm S.M. by explaining that the BPD officers were there to help him. ECF 45-3 at pp. 6, 11. S.M. responded by cursing at Mr. Williams. ECF 45-3 at pp. 6, 11. Mr. Williams then struck S.M. with an open hand across the face twice. ECF 45-3 at pp. 6, 12.[3] S.M. had a visible handprint mark on his face after the assault. ECF 54-2 at p. 9. Mr. White claimed that he was in the vestibule leading to S.M.'s hospital room during the assault, that he did not witness Mr. Williams striking S.M. and that he was otherwise unaware of the incident. ECF 45-4 at pp. 17–20. Mr. Williams disputed this claim, asserting that Mr. White was behind him in the hospital room when he slapped S.M. ECF 45-3 at p. 12.[4]

As a result of Mr. Williams's assault, S.M. sustained a ruptured eardrum, hearing loss, balance and mobility difficulties, and problems sleeping. ECF 45-1 at p. 7. It is uncertain at this time whether S.M. will ever regain full hearing capabilities. ECF 54-2 at p. 12. Additionally, S.M. has become more withdrawn and adverse to people touching him or being behind him. ECF 54-2 at p. 13. Neither Mr. Williams nor Mr. White ever claimed to have been in fear of S.M. Mr.

[3] The record includes allegations that Mr. Williams struck S.M. more than twice, although Mr. Williams only admitted to striking S.M. two times across the face.

[4] Mr. Ranabhat also claimed that Mr. White was in the hospital room during the assault. ECF 45-5 at p. 5. Additionally, Mr. Ranabhat asserted that, after the assault, Mr. Williams was leaving the hospital room when he told Mr. Ranabhat to use his taser on S.M. if S.M. continued to "act out." ECF 45-5 at p. 6.

White claimed that at no point while he was in the hospital room with S.M did he fear for his safety, ECF 45-4 at p. 14, nor did he fear for the safety of the hospital staff, *id.* at p. 14. Mr. Williams asserted that he did not fear for his safety at any point while S.M. was handcuffed. ECF 45-3 at p. 14. None of the officers involved in the incident reported Mr. Williams's assault to the BPD. ECF 45-3 at p. 14; ECF 45-4 at p. 22.

In January 2016, Mr. Williams was arrested for assaulting S.M, ECF 45-3 at pp. 14, 15 and in February 2016, he resigned as a BPD officer, ECF 45-3 at pp. 15–16. Mr. Williams pleaded guilty in the related criminal case in September 2016, and was sentenced to one year of supervised probation and two years of unsupervised probation. ECF 45-3 at pp. 3, 15.

On December 29, 2017, the BPD terminated Mr. White based on its conclusion that Mr. White had lied about whether he had been in the hospital room when Mr. Williams assaulted S.M. ECF 45-4 at p. 3. Mr. White entered an Alford plea in his related criminal case and was sentenced to unsupervised probation. ECF 45-4 at p. 23.

Ms. Coner initiated suit in this District on February 8, 2017. On April 28, 2018, Ms. Coner filed her motion for summary judgment.[5]

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*,

[5] On May 25, 2018, Mr. White filed his motion for summary judgment and opposition to Ms. Coner's motion for summary judgment. ECF 54. The court struck his motion for untimeliness, but has considered his opposition to Ms. Coner's motion. ECF 59.

673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247–48. The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam) (internal citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal citations omitted); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

## ANALYSIS

### i. Claims solely against Mr. Williams[6]

The court will grant Ms. Coner's request for summary judgment regarding her battery claim and her constitutional excessive force claims as to Mr. Williams, because it is undeniable from the record that Mr. Williams hit S.M. without justification while acting in his official capacity as a Baltimore police officer; indeed, Mr. Williams himself admitted to slapping S.M. in the face at least twice while S.M. was handcuffed on the hospital bed. *See generally Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (when considering whether an officer's use of force was excessive, "courts determine 'whether the officers' actions are 'objectively reasonable' in light of the facts

[6] Ms. Coner's amended complaint included a claim against Mr. Williams for negligent supervision, negligent retention, and negligent training, based upon Mr. Williams's alleged superior ranking compared to Mr. White and Mr. Ranabhat. ECF 17 at ¶¶ 60–64. While Ms. Coner has not abandoned this claim explicitly or otherwise addressed it, the court notes that it cannot succeed in light of Mr. White's undisputed testimony that he, rather than Mr. Williams, was the highest-ranked officer present during the incidents of January 14, 2015. ECF 45-4 at p. 13.

and circumstances confronting them, without regard to their underlying intent or motivation'" (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)); *Burno-Whalen v. State of Maryland*, No. GJH-15-564, 2016 WL 1259556, at *4 (D. Md. Mar. 28, 2016) (defining battery as the "unpermitted application of trauma by one person upon the body of another person" (quoting *McQuiggan v. Boy Scouts of Am.*, 536 A.2d 137, 141 (Md. 1988)).[7] Mr. Williams did not contest the battery and excessive force claims in his opposition to Ms. Coner's motion for summary judgment. Accordingly, there is no genuine dispute as to any material fact regarding Ms. Coner's battery claim or her excessive force claims based upon the battery of S.M. against Mr. Williams, and the court will grant summary judgment as to liability in her favor.

**ii. Claims against both Mr. Williams and Mr. White[8]**

Both defendants contested the remaining claims: conspiracy, intentional infliction of emotional distress ("IIED"), and false arrest/false imprisonment, as well as the constitutional claims predicated upon the conspiracy and false arrest/false imprisonment claims.

First, under Maryland law, a civil conspiracy claim "is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff." *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 763–64 (D. Md. 2015) (quoting *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 340 Md. 176, 189 (1995) (internal citation omitted)) (internal quotation marks omitted). Instead, parties alleging civil conspiracy claims must prove an agreement between the alleged conspirators as well as "the commission of an overt act, in furtherance of the agreement, that caused the plaintiff to suffer actual injury." *Marshall v. James*

---

[7] Unreported cases are cited not for their precedential value but for the soundness of their reasoning.

[8] Ms. Coner's complaint also included a claim against both Mr. Williams and Mr. White for liability to parent for tortious injury to a child. ECF 17 at ¶¶ 94–98. Ms. Coner did not request that the court grant summary judgment on that claim, which remains outstanding, and consequently Mr. Williams and Mr. White did not address it in their oppositions to the motion.

*B. Nutter & Co.*, 758 F.3d 537, 541 (4th Cir. 2014) (internal citation and quotation marks omitted). The overt act, done in furtherance of the conspiratorial agreement, is actionable as part of a conspiracy claim only if the act would constitute a tort had it been performed by one person. *Alleco Inc.*, 340 Md. at 190 (internal citation and quotation marks omitted).

It is unclear what tort underlies Ms. Coner's conspiracy claim. Nothing in the record supports a finding that Mr. White and Mr. Williams conspired to assault S.M., nor does the record dispositively show an agreement of any kind between the two officers with regards to the contested events of January 14, 2015. As it stands, the record appears to support the conclusion that Mr. Williams acted alone in his decision to assault S.M.

In her motion, Ms. Coner appeared to claim that the officers conspired to submit incomplete reports regarding the incident for the purposes of concealing Mr. Williams' assault. ECF 45-1 at pp. 11–12. To the extent that is Ms. Coner's argument, the court notes that Ms. Coner has failed to assert any basis in either statutory or case law which establishes concealment of an assault or a police officer's failure to submit an accurate and complete incident report as a tort, nor has she established how the concealment of the assault (rather than the assault itself) injured her or S.M. Accordingly, the court will deny Ms. Coner's request for summary judgment regarding her conspiracy claims against Mr. Williams and Mr. White.

Second, under Maryland law, parties claiming false arrest/false imprisonment must prove "(1) the deprivation of the liberty of another; (2) without consent; and (3) without legal justification." *Garcia v. Montgomery Cnty.*, 145 F. Supp. 3d 492, 523 (D. Md. 2015) (internal citation omitted). Ms. Coner's own behavior on January 14, 2015, makes her claim untenable. Nothing in the record suggests that Mr. White was wrong to place S.M. in police custody given that Ms. Coner told him S.M. had assaulted her and she was seeking treatment for S.M.'s mental

health condition. Furthermore, the fact that Mr. White elected *not* to arrest S.M., at Ms. Coner's request, and instead began to carry out Ms. Coner's request for an emergency petition, further indicates that Ms. Coner exercised significant influence over the series of events that she claims resulted in the alleged false arrest/false imprisonment. On this record, it appears that S.M.'s detention was executed with Ms. Coner's consent and was predicated upon the officers' legally justifiable belief that S.M. had assaulted Ms. Coner. Accordingly, the court will deny Ms. Coner's request for summary judgment on her false arrest/false imprisonment claim.

Third, Maryland law requires plaintiffs claiming IIED to "demonstrate that (1) the conduct is intentional or reckless; (2) the conduct is extreme and outrageous; (3) there is a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress is severe." *Lipenga v. Kambalame*, 219 F. Supp. 3d 517, 528 (D. Md. 2016) (internal citation and quotation marks omitted). "To satisfy the second element, the conduct in question must go beyond all possible bounds of decency, and ... be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (internal citation and quotation marks omitted). The fourth element requires a party to prove that he or she "suffered a *severely* disabling emotional response" to the conduct, such that no reasonable person "could be expected to endure it." *Id.* (internal citation and quotations marks omitted) (emphasis in original).

Here, there is a genuine issue of material fact regarding whether Mr. Williams's actions rise to the level of extreme conduct required by the second element. *See, e.g., Jones v. Family Health Ctrs. of Balt., Inc.*, 135 F. Supp. 3d 372, 383 (D. Md. 2015) (for conduct to be considered extreme and outrageous, it "must completely violate human dignity, threatening to shatter the frame upon which one's emotional fabric is hung." (internal citation and quotation marks

omitted)).[9] Further, regarding the fourth element, Ms. Coner has not provided sufficient evidence that would permit this court to conclude that S.M. has suffered a severely disabling emotional response that no reasonable person could be expected to endure as a result of the incidents that occurred on January 14, 2015. *Id.*; *see also Arsham v. Mayor & City Council of Balt.*, 85 F. Supp. 3d 841, 850 (D. Md. 2015) ("[L]iability for the tort of intentional infliction of emotional distress should be imposed sparingly, and its balm reserved for those wounds that are truly severe and incapable of healing themselves." (internal citation and quotation marks omitted)). Regarding S.M.'s emotional state, Ms. Coner has indicated that S.M. has had trouble sleeping and has become withdrawn. ECF 45-1 at p. 7; ECF 54-2 at p. 13. While the record illustrates S.M.'s ongoing *physical* ailments, the record is thin regarding S.M.'s *emotional* state that is attributable to this incident. Accordingly, the court will deny Ms. Coner's request for summary judgment regarding her IIED claim.

Finally, Ms. Coner requests that the court grant summary judgment on her § 1983 claim and her related Maryland constitutional claims, which rest upon her false arrest/false imprisonment and civil conspiracy claims. For the same reasons summary judgment was denied on the underlying false arrest/false imprisonment and civil conspiracy claims, the court will deny this request as well. Additionally, in her motion for summary judgment, Ms. Coner refers to an excessive force claim against both defendants, but then focuses the limited analysis of her request for summary judgment on the underlying battery claim against Mr. Williams. Ms. Coner has failed to provide support for summary judgment on any § 1983 excessive force claim other than that against Mr. Williams for striking S.M., as discussed above.

---

[9] Further, it is not clear what conduct by Mr. White Ms. Coner contends was extreme and outrageous, and what emotional effects she claims S.M. endured due to Mr. White's behavior.

**CONCLUSION**

For the reasons stated above, Ms. Coner's motion for summary judgment will be granted as to the battery and constitutional excessive force claims against Mr. Duane Williams, Jr., and otherwise denied. A separate order follows.

2/12/19
Date

CCB
Catherine C. Blake
United States District Judge